Larry Anthony BLOOMER, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8603–CR–268.

Supreme Court of Indiana.

Oct. 29, 1987.

Nathaniel Ruff, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony, for which he received a twenty (20) year sentence, and Burglary, a Class B felony, for which he received a six (6) year sentence, the sentences to run concurrently.

The facts are: Appellant and the victim were friends. They met because appellant worked with the victim's husband. For a month or so prior to the alleged rape, there was considerable contact between appellant and the victim. The victim had been having marital problems and appellant told her that her husband was being unfaithful to her. They met on several occasions and on one occasion went shopping together. They also entered the husband's place of business where appellant had informed the victim she would find evidence that her husband had been unfaithful.

During the trial, the victim and appellant each alleged that the other had initiated the contact. Appellant claimed that he had sexual intercourse with the victim on three occasions prior to the incident in question. The victim denied this.

On the night in question, appellant telephoned the victim at approximately 10:15 p.m. and inquired if her husband would be home that night. She told appellant she did not know and did not care. Appellant said that he would look for her husband and call her back. At approximately 2:15 a.m., appellant called back and told the victim he could not find her husband. She again told him she did not care, hung up and went back to sleep.

A short time later she awoke to find someone lying on top of her and kissing her. She first thought it was her husband, then discovered that it was appellant. Appellant told her to remove her clothes and do what he said or he would kill her. He held an object to her throat and told her it was a knife. She pleaded with him not to do anything, but he threatened to kill her children if they awoke. Appellant then placed a rope around her throat and choked her. At this time, the telephone rang and appellant let go of the rope; however, he continued to threaten her and raped her.

After she heard appellant leave by the front door, she telephoned her mother-in-law and requested that she call the police. She also discovered that a kitchen window was open and that the screen had been removed from the window. When the police arrived, they found the kitchen window screen lying outside, and a rope and a glove were found on the victim's bed. Police arrested appellant at his home where they recovered a knife.

At first, appellant denied that he had been to the victim's house that night; however, he then changed his story and in a written statement to the police he stated that he went to see the victim. When he did not receive an answer to his knock at the front door he went to the rear of the house, removed a window screen and climbed inside. He stated he was not invited by the victim but went to her bedroom, started kissing her and then had sexual intercourse with her. He claimed he did not threaten her. He admitted, however, that he brought gloves and a rope because he thought he would have to tie her up, and the gloves were to prevent fingerprints. He stated that he lost one of the gloves and threw the other one out of the window. He admitted that he had not been invited to the victim's house that night.

At trial, appellant claimed that he was invited by the victim, that she requested him to bring a rope and gloves because she was into kinky sex, and that she told him to enter through a kitchen window to prevent her husband from finding out. He claimed he did not have a weapon with him, and that the victim consented to sexual intercourse.

Appellant's sole assignment of error is that there is insufficient evidence to prove him guilty beyond a reasonable doubt of rape and burglary. He bases his claim

upon the premise that the victim's testimony is inherently unreliable. He claims her testimony established that: she had substantial contact with appellant for a month or so prior to the night in question; he called her many times and that she called him many times; and together they "broke into" the husband's place of business to find evidence of his unfaithfulness. He claims he assisted the victim in attempting to sell a motorcycle and warned her of her husband's potential for violence. Many of these facts were verified by the victim.

The fact that the victim and appellant had close contact with each other over a period of time does not justify the conduct described by the victim. This case presents a question of the weighing of the evidence and a determination of the credibility of the witnesses. *Rutledge v. State* (1986), Ind., 495 N.E.2d 535. The jury was not required to believe appellant's testimony. *Graves v. State* (1984), Ind., 472 N.E.2d 190. In fact, an examination of this record indicates that it was appellant who changed his story as the case progressed. The victim's statement to the police and at trial remained constant. There is ample evidence in this record to support the jury's verdict.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, PIVARNIK and DICKSON, JJ., concur.